```
             UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Jason V. Hudon

    v.                                    Civil No. 14-cv-569-JL
                                                Opinion No. 2016 DNH 019

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


**ORDER ON APPEAL**

Jason V. Hudon has appealed the Social Security Administration's ("SSA") denial of his application for a period of disability and disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite Hudon's severe impairments (osteoarthritis with osteoporosis, mild degenerative disc disease, fibromyalgia, history of substance abuse, and depression), he retains the residual functional capacity ("RFC") to perform a full range of sedentary work, and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council later denied Hudon's request for review, see id. § 404.968(a), with the result that the ALJ's decision became the final decision on Hudon's application, see id. § 404.981. Hudon then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Hudon has moved to reverse the decision, see L.R. 9.1(b), challenging it as unsupported by substantial evidence. He argues that, in making his RFC determination, the ALJ (1) failed to properly evaluate the medical opinion of his treating rheumatologist, (2) failed to properly evaluate Hudon's subjective complaints, and (3) substituted his own judgment for medical opinion as to Hudon's mental condition. The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision. See L.R. 9.1(e). After careful consideration, the court agrees with the Acting Commissioner that the ALJ committed no error, and therefore grants the Acting Commissioner's motion to affirm (and denies Hudon's motion to reverse) the ALJ's decision.

## I.  **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The court will uphold the ALJ's decision if it is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). Though the evidence in the record may support multiple conclusions, the court will still uphold the

ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Heath & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## II.  Background

In assessing Hudon's request for disability benefits, the ALJ engaged in the requisite five-step process.  See 20 C.F.R. § 416.920.  He first concluded that Hudon had not engaged in substantial gainful activity since the alleged onset of his disability on January 28, 2010.  At the second step, he determined that Hudon suffers from several severe impairments: osteoarthritis with osteoperosis, mild degenerative disc disease, fibromyalgia, history of substance abuse (albeit in remission) and depression.  The ALJ then found that Hudon's impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.  See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  Then, the ALJ concluded that Hudon retained the RFC to perform a full range of sedentary work with a few nonexertional limitations -- specifically, that he must "avoid hazards" and "is limited to simple, repetitive, one to two step tasks."  Admin. R. at 17. After finding that Hudon could not perform his past relevant work as an installer of drywall, see 20 C.F.R. § 404.1565, the ALJ

continued to step five, where he concluded that Hudon could perform other jobs that exist in significant numbers in the economy. Therefore, the ALJ found, Couture was not disabled within the meaning of the Social Security Act.

### III. <u>Analysis</u>

Hudon has leveled three challenges at the ALJ's decision. First, he contends that the ALJ erred in discounting the opinion of his treating rheumatologist, Dr. John Yost, which the ALJ afforded "little weight" when Hudon contends it should have received more weight. Second, Hudon argues that the ALJ erred in evaluating the credibility of his subjective complaints. Finally, Hudon suggests that, in the absence of a complete record, the ALJ improperly substituted his own judgment for medical opinion when crafting Hudon's mental RFC. Finding none of these arguments persuasive for the reasons discussed below, the court affirms the ALJ's decision.

### <u>Dr. Yost's opinion</u>[1]

Hudon first alleges that the ALJ erred by giving "little weight" to the opinion of Dr. Yost, his treating rheumatologist,

---

[1] In evaluating Hudon's RFC, the ALJ had two medical opinions at his disposal -- those of Dr. John Yost, Hudon's treating rheumatologist, and Dr. Khwaja Hussein, Hudon's treating physician. The ALJ afforded limited weight to both physicians' opinions. Hudon only contests the ALJ's treatment of Dr. Yost.

4

as to Hudon's residual functional capacity.  The administrative record contains two assessments by Dr. Yost of Hudon's ability to do work-related physical activities -- one dated December 7, 2011, and the other dated July 19, 2012.  In the latter opinion, Dr. Yost concluded that Hudon could "lift and carry less than five pounds and has the ability to sit for two to three hours and stand for one or two hours in an eight-hour workday" and that Hudon was "unable to walk without interruption."  Admin. R. at 20.  The ALJ afforded Dr. Yost's opinion little weight, however, upon finding that said opinion was "not supported by his own treatment notes or the evidentiary record as a whole."  Id.  Hudon faults the ALJ for failing to give greater weight to Dr. Yost's opinion because he was Hudon's treating rheumatologist, and because he had access to the treatment records of several other physicians in forming his opinion.

    The ALJ weighs the medical opinions "based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention."  Grant v. Colvin, 2015 DNH 59, 7 (citing 20 C.F.R. § 416.927(c)).  The ALJ generally gives more weight to the opinion of a source who examined the claimant, and may give controlling weight to the claimant's treating source.  20 C.F.R.

§ 404.1527(c). The ALJ should defer to a treating physician's opinion insofar as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [his] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ may, however, discount an opinion that is not so supported. See, e.g., Carrion v. Colvin, 2014 DNH 174, 6-8 (upholding ALJ's decision to reject treating physician's opinions as unsupported when claimant failed cite supporting record evidence). When the ALJ does so, he must "give good reasons . . . for the weight [he] give[s] to [the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). The mandate to give "good reasons" means that the ALJ's order "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." Social Security Ruling ("SSR") 96–2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinion, 1996 WL 374188, at *5 (S.S.A. 1996).

Here, the ALJ gave good reasons for his treatment of Dr. Yost's opinion. The ALJ devalued Dr. Yost's opinion upon finding it inconsistent with Dr. Yost's own treatment notes.

Specifically, he cited Dr. Yost's observation that Hudon's reported symptoms and functional limitations were disproportionate to some fibromyalgia tender points found during examination; that Hudon reported marked improvement of those symptoms after taking a prescribed medicine; and that Dr. Yost's musculoskeletal examination of Hudon showed a "full motion of bilateral wrists, hands, knees, shoulders, and elbows with no large or peripheral joint synovitis." Admin. R. at 20. The ALJ specifically discounted the December 7, 2011 opinion because Dr. Yost noted in the margin that Hudon's functional limitations were "difficult to assess without a formal functional capacity evaluation," Admin R. at 359, suggesting that he had not performed such an evaluation before completing that opinion. The ALJ here certainly made clear the weight he afforded Dr. Yost's opinion and the reasons for it. Cf. Costa v. Astrue, 2010 DNH 190, 22-23 (ALJ erred by completely ignoring medical source opinion).

Rather than arguing that the reasons given by the ALJ fail to satisfy the "good reasons" requirement, Hudon instead contends that Dr. Yost's opinion should be given greater weight because it is consistent with other record evidence. First, Hudon argues that the notes of Hudon's endocrine specialist, Dr. Turco, "provided valuable insight regarding possible alternate etiological explanations for conditions that are not easily

explained by objective testing." Mem. at 14. Notably, Hudon does not point to any notes or opinion by Dr. Turco that would appear inconsistent with the ALJ's RFC determination. Hudon's reliance on the consistency of his subjective complaints to several providers, see Mem. at 15, likewise does not undercut the ALJ's conclusion. As the court explains infra, the ALJ did not err in discounting the credibility of Hudon's subjective complaints.

Finally, Hudon argues, Dr. Yost's opinion should be given greater weight because he had the benefit of a "longitudinal view of the medical record," including MRI results that indicated potential impingement of a nerve root in Hudon's spine.[2] Mem. at 15. Notably, Dr. Yost did not list the MRI results as a basis for his opinion. Though the MRI results comport with Dr. Yost's opinion and may thus support another conclusion than the one at which the ALJ arrived, the court still affirms the ALJ's findings where, as here, "a reasonable mind, reviewing the evidence in the

---

[2] Hudon also alludes to the argument that the ALJ erred in concluding that Hudon did not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 104A (listing 1.04A) because this MRI shows a potential impinged nerve root in the spine. See Mem. at 15. But, as the Commissioner correctly observes, the relevant listing requires not only evidence of a compressed nerve root, but also evidence of "limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 104A (listing 1.04A). And, as the Commissioner also correctly observes, Hudon has not pointed to any such evidence here.

8

record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Irlanda Ortiz v. Sec'y of Heath & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Here, the ALJ adequately explained his reasons for discounting Dr. Yost's opinions and those reasons are supported by substantial evidence.  The court therefore finds no error.[3]

**Hudon's subjective complaints**

Hudon fires his next broadside at the ALJ's evluation of his subjective complaints of pain and his ability to work.  The ALJ appropriately first considered whether Hudon's "medically determinable impairments . . . could reasonably be expected to produce the symptoms" of which Hudon complained, SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 at *2 (S.S.A. 1996), and concluded that they could.  Admin. R. at 18.  He then moved to the next step of evaluating whether Hudon's complaints about those symptoms were credible,

---

[3] Hudon's argument on this front also includes a footnote reminding the court that "[t]he ALJ has a duty to fully develop the record."  Mem. at 16 n.2.  It is true to a certain degree. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  At the same time, Hudon has a duty to develop his arguments before this court can consider them.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (insufficiently developed arguments are deemed waived).  As Hudon has failed to develop his two-sentence argument that the ALJ failed to develop a record on Hudon's physical RFC, it is deemed waived.

SSR 96-7p, 1996 WL 374188, at *2, and concluded that they were not.

Citing authority from the Eastern District of Pennsylvania, Hudon argues that the ALJ committed reversable error at the second step by failing to address each of the seven factors set forth in 20 C.F.R. 404.1929(c)(3)(i)-(vii). See Mem. at 17. As this court has previously observed, however, the ALJ is not required to make specific findings as to every one of those factors. Childers v. Colvin, 2015 DNH 142, 11 n.4. Where, as here, the ALJ's assessment of the plaintiff's credibility is supported by specific findings, it is entitled to deference. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Holder offers no further critique of the ALJ's credibility assessment, and so no more need be said.

**Hudon's residual functional capacity**

Finally, Hudon contends that the ALJ erred in his RFC determination. Specifically, Hudon asserts that he "did not have the RFC to perform [substantially gainful activity] on a sustained basis because of the functional limitations caused by [his] mental impairments." Mem. at 18. Hudon argues that Dr. Yost's opinion and his subjective complaints, if given the treatment he contends that they deserve but did not receive, would support his inability perform such activities. Id. at 20. For the reasons discussed above, the ALJ did not err in his

treatment of Dr. Yost's opinions and Hudon's subjective complaints.

The only argument left to Hudon, then, is that the ALJ erred in crafting Hudon's mental RFC by acting as his own medical expert. As best the court can make out, the essence of Hudon's argument is that the ALJ failed to develop the record by seeking additional records from some of Hudon's providers. Absent those records, Hudon contends, the ALJ erroneously drew his own conclusions about Hudon's mental RFC. This argument fails for two reasons.

First, as this court has previously explained, "[s]o long as an ALJ does not convert raw medical evidence into an RFC assessment, he has not overstepped his bounds by substituting his own judgment for that of a medical professional." Delafontaine v. Astrue, 2011 DNH 5, 30-31 n.29. Here, the ALJ does not appear to have committed this error. As Hudon himself acknowledges, the ALJ based his conclusions as to the causes of stressors in Hudon's life not on raw medical evidence, but on conclusions drawn by providers at the Dartmouth Hitchcock Clinic and a mental status exam and psychosocial assessment performed by a counselor, Richard Slater. See Mem. at 20. The ALJ then evaluated Hudon's RFC in light of that evidence. See 20 C.F.R. § 416.945. This is well within the ALJ's purview. Evangelista v. Sec'y of HHS, 826 F.2d 136, 144 (1st Cir. 1987).

11

Second, while the ALJ has "a duty to develop an adequate record from which a reasonable conclusion can be drawn," Heggarty, 947 F.2d at 997 (quotations omitted), to amount to error, an allegation that the record is incomplete must be accompanied by a demonstration that the incompleteness prejudiced the plaintiff, see Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H. 1996).  Hudon's mere speculation that the additional records from Concord Hospital and one Dr. Patil "may have been helpful in assessing the plaintiff's current functional limitations," Mem. at 20, does not satisfy this standard.  Indeed, Hudon's suggestion that the records "may" have assisted the ALJ, without specific allegations as to how, "indicates that [Hudon] has not seen them.  Thus, it is difficult to see how he can argue that they are pertinent."[4]  Keene v. Colvin, 2014 DNH 226, 16.

## IV.  Conclusion

Because the ALJ's RFC assessment, his assessment of Hudon's credibility, and his decision to discount the opinions of Hudon's treating rheumatologist were supported by substantial evidence, and because he adequately explained his decision to weigh the

---

[4] Hudon's counsel was aware of the absence of those additional records as of the date of the hearing before the ALJ.  At counsel's request, the ALJ held the record open for two weeks to give counsel an opportunity to obtain those records, among others.  The ALJ's opinion then issued some five months later.  Hudon's allegation that it was the ALJ who erred in failing to obtain the records in question is not well-founded.

opinion evidence, Hudon's motion to reverse the SSA's decision[5] is DENIED, and the Commissioner's motion to affirm it[6] is GRANTED.  See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 26, 2016

cc:  Judith E. Gola, Esq.
     T. David Plourde, Esq.

---

[5] Document no. 8.

[6] Document no. 10.